No. 23-1968

# In the
# United States Court of Appeals
# for the Seventh Circuit

UNITED STATES OF AMERICA,
                    Plaintiff-Appellee,

v.

DONALD D. REYNOLDS,
                    Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:22-CR-22 — Hon. Damon R. Leichty, *Judge*.

## BRIEF FOR THE UNITED STATES

CLIFFORD D. JOHNSON
United States Attorney

DAVID E. HOLLAR
Assistant United States Attorney
Chief, Appellate Division

Eli M. Temkin
Assistant United States Attorney
United States Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
(219) 937-5500

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF ISSUE .......................................................................... 2

STATEMENT OF THE CASE ................................................................... 2

    I.    Nature of the case ................................................................ 2

    II.   Underlying offense ............................................................... 2

    III.  Supervised release ............................................................... 3

    IV.  Revocation hearing and judgment .................................. 4

SUMMARY OF THE ARGUMENT ....................................................... 8

ARGUMENT ............................................................................................... 9

    I.    The district court did not plainly err by revoking Reynolds'
        supervised release, as the court weighed treatment options
        and found Reynolds' conduct required revocation and
        incarceration. ........................................................................ 9

        A.   Review is limited to plain error at most. ............................. 9

        B.   The district court did not believe treatment was
            unavailable instead of incarceration; rather the court
            considered and rejected treatment as an appropriate
            alternative based on Reynolds' conduct............................ 11

CONCLUSION............................................................................................. 19

# TABLE OF AUTHORITIES

**CASES**

*Black v. Romano,* 471 U.S. 606 (1985) ........................................................ 11, 12

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ......................................................... 11

*Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910 (7th Cir. 2012) ....... 8

*United States v. Brooker*, 858 F.3d 983 (5th Cir. 2017) .................. 9, 12, 14, 18

*United States v. Crace*, 207 F.3d 833 (6th Cir. 2000) ...................................... 12

*United States v. Hammonds*, 370 F.3d 1032 (10th Cir. 2004) .............. 9, 12, 18

*United States v. Jones*, 774 F.3d 399 (7th Cir. 2014) ...................................... 11

*United States v. Kelley*, 446 F.3d 688 (7th Cir. 2006) ...................................... 11

*United States v. Lee*, 795 F.3d 682 (7th Cir. 2015) ............................................ 9

*United States v. Lore*, 712 F. App'x 569 (7th Cir. 2017) .................................. 15

*United States v. Patlan*, 31 F.4th 552 (7th Cir. 2022) ...................................... 13

*United States v. Pierce*, 132 F.3d 1207 (8th Cir. 1997) .............................. 17, 18

*United States v. Trotter*, 270 F.3d 1150 (7th Cir. 2001) .................................. 16

*United States v. Yankey*, 56 F.4th 554 (7th Cir. 2023) ............................... 11, 12

**STATUTES**

18 U.S.C. § 924(c)(1)(A) ...................................................................................... 3

18 U.S.C. § 3231 .................................................................................................... 1

18 U.S.C. § 3583 ............................................................................................... 2, 15

18 U.S.C. § 3583(d) .....................................................................................passim

18 U.S.C. § 3583(e).........................................................................4, 13

18 U.S.C. § 3583(e)(3)................................................................11, 13

18 U.S.C. § 3583(g)..........................................................5, 9, 11, 13

18 U.S.C. § 3583(g)(1)................................................................11, 13

18 U.S.C. § 3583(g)(4)................................................................11, 13

18 U.S.C. § 3605...................................................................................1

21 U.S.C. § 841(a)(1).........................................................................3

21 U.S.C. § 846....................................................................................3

28 U.S.C. § 1291.................................................................................2

## RULES AND GUIDELINES

Fed. R. App. P. 4(b)(1)(A).................................................................2

U.S.S.G. § 7B1.1(a).........................................................................16

U.S.S.G. § 7B1.1(a)(2)...................................................................16

U.S.S.G. § 7B1.1(b).........................................................................16

U.S.S.G. § 7B1.3(a)(1)...................................................................16

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

───────────────────────────

No. 23-1968

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

DONALD D. REYNOLDS,
Defendant-Appellant.

───────────────────────────

On Appeal from the United States District Court
for the Northern District of Indiana

───────────────────────────

BRIEF FOR THE UNITED STATES
───────────────────────────

## JURISDICTIONAL STATEMENT

The jurisdictional statement of the appellant is not complete and correct.

The United States District Court for the Southern District of Indiana had jurisdiction under 18 U.S.C. § 3231 over Reynolds' original federal criminal prosecution. That court sentenced Reynolds to a term of imprisonment, to be followed by a term of supervised release, the latter of which Reynolds began in 2020. R. 2, 4-3.[1] In 2022, the United States District Court for the Northern District of Indiana accepted a transfer of jurisdiction pursuant to 18 U.S.C.

───────────────────────

[1] Citations to the district court record (N.D. Ind. No. 3:22-CR-22) are designated as "R." Reynolds' appellate brief is "Br." and his appendix is "App."

§ 3605. R. 2. Acting under 18 U.S.C. § 3583, the district court revoked Reynolds' supervised release on May 11, 2023, and entered judgment on the docket on May 12, 2023. R. 46, 47. Reynolds timely filed a notice of appeal on May 22, 2023. R. 49; Fed. R. App. P. 4(b)(1)(A). This Court has jurisdiction under 28 U.S.C. § 1291 over this appeal from the final revocation judgment.

## STATEMENT OF ISSUE

Reynolds stipulated to violating his supervised release conditions by testing positive for methamphetamine and leaving court-ordered treatment. Did the district court plainly err in revoking Reynolds' supervised release, when it explained why additional treatment was insufficient and incarceration was needed?

## STATEMENT OF THE CASE

### I.   Nature of the case

Defendant Donald D. Reynolds stipulated to violating his conditions of supervised release by testing positive for drugs and failing to complete treatment. App. 21-23. The district court revoked his release and sentenced him to 21 months' imprisonment. App. 7. Reynolds appeals the revocation judgment.

### II.   Underlying offense

Reynolds (who was born in 1971) has a history of Indiana theft and burglary convictions dating back to 1990. R. 35 at 4-8; R. 45 at 1. He was

imprisoned from roughly 1994 to 2001. R. 35 at 6. In 2001 and 2002 he used methamphetamine daily. R. 35 at 3.

In 2002, Reynolds was charged with conspiring to possess with intent to distribute and to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and possessing a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §924(c)(1)(A). R. 4-2. After pleading guilty, Reynolds was sentenced to 248 months' imprisonment, to be followed by 60 months' supervised release. R. 4-3. As a condition of release, he was required to refrain from the unlawful use of controlled substances and to submit to periodic drug tests. R. 4-3 at 3.

## III. Supervised release

While on supervised release in June 2022, Reynolds tested positive for methamphetamine. R. 35 at 3; App. 23. His probation officer responded by referring him to a recovery center for counseling, which Reynolds consistently attended until September 2022. R. 35 at 3; *see also* App. 3 (noting missed session on September 14, 2022).

On November 1, 2022, Reynolds tested positive for methamphetamine again. R. 35 at 3; App. 23. A treatment provider recommended he transition to an intensive outpatient program, but Reynolds "did not begin services as directed." R. 35 at 3.

Based on these incidents, the Probation Department in December 2022 sought to revoke Reynolds' term of supervised release. R. 15. At an April 3, 2023, initial hearing, a magistrate judge declined to detain Reynolds and instead ordered his release on the condition that he enroll and maintain residence in a 28-day inpatient treatment program at Hickory Treatment Center. R. 28 at 2-3; App. 26.

Reynolds attempted suicide while at Hickory and was transferred to a psychiatric hospital. R. 35 at 3; App. 26-27. Upon his release, Hickory declined to readmit him. R. 35 at 3.

On April 21, 2023, the magistrate ordered Reynolds to enroll and reside at either Regional Health Systems or another qualified inpatient facility until he completed the program or received court permission to leave. R. 36 at 3; App. 27, 31. On the night of April 28, 2023, he left Regional without permission and without completing treatment. App. 5, 15-16. He was arrested the next day. R. 41.

## IV. Revocation hearing and judgment

In preparation for a May 11, 2023, hearing on the petition to revoke Reynolds' supervision, the probation officer submitted a report summarizing a host of alleged violations. R. 45. The report also set out the district court's statutory sentencing options. R. 45 at 5-6. It informed the court, that, under 18 U.S.C. § 3583(e), upon finding a violation, the court could continue or extend

supervised release, or it could revoke release and order incarceration. R. 45 at 5. If the court found that Reynolds had violated by testing positive for illegal drugs more than three times in a year, revocation was nominally mandatory under § 3583(g). R. 45 at 6. But, the report explained, there was a potential exception based on treatment: "The Court shall consider whether the availability of appropriate substance abuse programs, or the offender's current or past participation in such programs, warrants an exception from the requirement of mandatory revocation and imprisonment under 18 U.S.C. §3583(d)." R. 45 at 6.

The report also addressed the Sentencing Guideline policy statements, which it noted were "advisory and non-binding." R. 45 at 6. Under the policy statements, Reynolds had allegedly committed a Grade B violation by possessing methamphetamine. R. 45 at 6. The policy statements direct that, on finding a Grade B violation, the court revoke release and order 21-27 months of incarceration. R. 45 at 6.

At the final revocation hearing, Reynolds stipulated that he violated his conditions of release by twice testing positive for methamphetamine and by "sign[ing] himself out of Regional Health Systems in-patient substance use program without completing the program and without the permission of clinical staff or the Court." App. 21-23. The government agreed not to pursue the remaining alleged violations. App. 22. The court then asked, "Does either

side need to tender any additional factual support or basis for the revocation today?" App. 23. Both parties said no, with Reynolds' counsel stating: "Not with regard to revocation, Your Honor, but I would like to proffer additional facts regarding the sentence." App. 23. With both parties satisfied on the factual basis, the court found Reynolds had violated supervision and stated it would revoke his supervised release. App. 24.

The court then discussed the Guidelines calculation while noting it was not bound to follow the resulting sentencing range. App. 24-26. Under the policy statements, Reynolds' "most serious charge" was possession of methamphetamine, a Grade B violation. App. 25. The court then said: "Revocation is mandatory -- of course, I've already done that -- because you possessed a controlled substance." App. 25. It concluded that the policy statements recommended 21-27 months' imprisonment. App. 25.

Reynolds did not object to any of these statements. App. 25-26. He affirmed he understood the sentencing options, and his counsel and government counsel agreed the court had accurately applied the Guidelines. App. 25-26. Reynolds' counsel explained the circumstances in which he relapsed and left treatment. App. 26-30. He also asserted Regional was willing to allow Reynolds back. App. 28.

The government sought 24 months' incarceration, arguing that "Reynolds showed that he was not amenable to supervision" because he

avoided treatment, left a program without permission, and never completed his program. App. 32. Reynolds' counsel then argued that he needed treatment, not imprisonment. App. 33. He explained: "The purpose of supervised release is to prevent recidivism, and the best way to prevent recidivism in this case is to help Mr. Reynolds get that treatment. He wants treatment. He's been trying to get it." App. 33-34. He continued arguing for treatment: "[W]hy send him back to prison for a couple of years? ... [A]ll I can do is hand it to the Court and ask you to give him a sentence that, hopefully, will accommodate, you know, his needs for treatment, real treatment, instead of being warehoused for another couple of years." App. 35; *see also* App. 33-36. Counsel also asked the court to delay ruling while Reynolds sought treatment. App. 36. The government in rebuttal responded that Reynolds already had chances he did not take, warranting revocation and imprisonment. App. 36.

The district court then explained its view of the revocation sentencing factors. App. 39-45. One of its "largest concerns" was Reynolds' failure to comply with court-ordered treatment. App. 43. "And if those alternatives to imprisonment won't work, they won't stick, then the unfortunate reality is, then, that imprisonment is the mechanism by which the Court needs to secure deterrence and public protection and to promote those goals." App. 43-44.

The court concluded incarceration was appropriate: "I think the reality is, there will have to be imprisonment to promote federal sentencing goals."

App. 44. Government and defense counsel assured the court that it had addressed their arguments, including any in mitigation. App. 45-46. The court imposed a 21-month sentence with no term of release to follow and entered judgment on the two stipulated violations. App. 46; R. 47.[2]

## SUMMARY OF THE ARGUMENT

Reynolds stipulated to violating his supervised release conditions. He opted not to argue for drug treatment in lieu of incarceration before the district court announced whether it would revoke his release. He thus failed to preserve the point, limiting appellate review.

Regardless, the record refutes Reynolds' appellate claim that the district court erroneously thought revocation here was mandatory. Taken in context, the entirety of the hearing makes clear that the parties and the court recognized that the court had discretion, if it wished, to order treatment instead of incarceration. As the court explained, though, Reynolds' conduct—including repeatedly cutting off treatment—showed that treatment was not a

---

[2] In his Statement of the Case, Reynolds states in a footnote that the district court did not formally dismiss the alleged violations to which he did not stipulate and suggests a limited remand. Br. 5 n.2. He has not sufficiently developed that argument and therefore has waived it. *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2012). Regardless, he has not identified any statute, rule, or judicial decision that requires the court to dismiss on the record alleged violations that the government does not pursue at a revocation hearing. Reynolds thus has shown no basis to remand.

good option here and that revocation and incarceration were necessary to satisfy the applicable § 3553(a) factors.

## ARGUMENT

### I. The district court did not plainly err by revoking Reynolds' supervised release, as the court weighed treatment options and found Reynolds' conduct required revocation and incarceration.

#### A. Review is limited to plain error at most.

The Court typically reviews a revocation determination for abuse of discretion, and Reynolds argues that standard applies. *United States v. Lee*, 795 F.3d 682, 685 (7th Cir. 2015); *see also* Br. 12 (quoting *United States v. Hammonds*, 370 F.3d 1032, 1038 (10th Cir. 2004)); *United States v. Brooker*, 858 F.3d 983, 985 (5th Cir. 2017). "But this all assumes that the defendant has properly preserved his objection." *Lee*, 795 F.3d at 685. When a defendant fails to raise an argument before the district court, he at minimum forfeits the point. *See id.* The Court reviews a forfeited objection only for plain error. *Id.* "Under this limited standard, the error must be clear and uncontroverted at the time of appeal, ... affect substantial rights, and seriously impugn the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

The Court here should review for plain error. On appeal, Reynolds argues that the district court erroneously viewed revocation as mandatory under 18 U.S.C. § 3583(g) without recognizing that 18 U.S.C. § 3583(d) granted it discretion to order treatment instead of incarceration. He failed to preserve

9

any such argument in the district court. As he acknowledges, he did not mention § 3583(d) at the revocation hearing. Br. 13. Nor, even when prompted before the court announced it would revoke his release (App. 23), did he argue for treatment instead of incarceration. On the contrary, he assured the court that he had nothing to add as to revocation but would "proffer additional facts regarding the sentence." App. 23. He thus failed to raise any treatment-based argument before the court announced it would revoke his release. To the extent Reynolds claims the district court needed to consider treatment options before announcing its intent to revoke, he failed to preserve that argument.

Reynolds' claim that he preserved his appellate issue actually undercuts his argument. True, he discussed treatment later in the hearing when the district court was focused on a remedy for the admitted violations. Br. 13; App. 33-36. At that point, though, the court likewise discussed treatment and explained why it was an insufficient alternative to incarceration. App. 40-44.

Reynolds cannot have it both ways. On one hand, if the district court needed to discuss treatment options before announcing it would revoke his release, then Reynolds failed to timely present that issue to the district court, and this Court's review is limited to plain error. On the other hand, to the extent it was sufficient for him to discuss the treatment alternative during the sentencing phase, it was equally sufficient for the court to do the same, and his ultimate argument fails on the merits.

**B.** **The district court did not believe treatment was unavailable instead of incarceration; rather the court considered and rejected treatment as an appropriate alternative based on Reynolds' conduct.**

In general, upon finding a supervisee has violated release conditions, a court may revoke release and order incarceration. 18 U.S.C. § 3583(e)(3). Certain violations mandate revocation, including illegal drug possession or testing positive for drugs more than three times in a year. 18 U.S.C. § 3583(g)(1), (4). When proceeding under § 3583(g) and "considering any action against a defendant who fails a drug test," the court is to weigh an exception to otherwise-mandatory revocation based on potential treatment: "The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines." 18 U.S.C. § 3583(d).

Revocation hearings are less formal than initial sentencing hearings. *United States v. Yankey*, 56 F.4th 554, 557-58 (7th Cir. 2023). When a court has discretion not to revoke supervised release, the defendant must have a chance to present mitigating circumstances and argue against revocation. *Morrissey v. Brewer*, 408 U.S. 471, 487-88 (1972); *Black v. Romano,* 471 U.S. 606, 612 (1985); *see also United States v. Jones*, 774 F.3d 399, 403 (7th Cir. 2014) (applying *Romano* to supervised release); *United States v. Kelley*, 446

F.3d 688, 691 (7th Cir. 2006) (same for *Morrissey*). However, a court need not expressly state that it "considered and rejected" "alternatives to incarceration." *Romano,* 471 U.S. at 612; *see also id.* at 610-16. Unlike at the initial sentencing, in a revocation hearing the court need not expressly address even the defendant's main arguments. *Yankey*, 56 F.4th at 558. The "more flexibl[e]" requirement is "that district courts approach revocation hearings with an open mind and consider the evidence and arguments presented before imposing punishment." *Id.* (citation and internal quotation marks omitted).

These standards apply to consideration of the § 3583(d) treatment exception, where implicated. No "magic words" are needed to show the district court considered treatment as an alternative to otherwise-mandatory incarceration. *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). "Implicit consideration is all that is required." *Brooker*, 858 F.3d at 987. When "the defendant argues to the district court that a substance abuse treatment program should be imposed and the court still revokes supervised release, it is understood that the court implicitly considered and rejected application of the drug treatment exception." *Id.* (collecting cases). A district court does not abuse its discretion if it rejects treatment without an explicit ruling or explanation, at least when "[n]othing in the record indicates that the court did not believe it had the *ability* to consider drug treatment." *Id.*; *see also Hammonds*, 370 F.3d at 1039.

The record here shows the district court considered the possibility of treatment in lieu of incarceration but rejected that option based on the facts before it. As an initial matter, the record does not support Reynolds' claim that the court viewed this case as falling within § 3583(g)'s mandatory revocation provisions. The stipulated violations were Reynolds' two positive drug tests and his leaving treatment. App. 5, 21-23. Neither necessarily triggers § 3583(g). The only possibly applicable subsections would be § 3583(g)(1) and (4). Subsection (g)(4) requires failing more than three drug tests in a year, so Reynolds' two failed tests did not qualify. Under subsection (g)(1), a positive drug test could allow a court to infer drug possession, *United States v. Patlan*, 31 F.4th 552, 557-58 (7th Cir. 2022); but here, consistent with the parties' stipulation as to violations, the court did not formally find that Reynolds violated his release conditions by possessing drugs.

The court thus appears to have proceeded under the discretionary revocation provisions set forth in 18 U.S.C. § 3583(e). Regardless, whether viewed under § 3583(e) discretion or under the § 3583(d) treatment exception, the district court properly weighed treatment as an alternative to incarceration.

Numerous portions of the record show the district court was aware of its discretion to order treatment. Probation's pre-hearing report presented discretionary revocation possibilities under § 3583(e)(3). R. 45 at 5. The report

also stated that, if revocation was mandatory, the court was to consider the § 3583(d) treatment exception. R. 45 at 6. Because the court was informed of the exception and "still revoke[d] supervised release," at minimum "it is understood that the court implicitly considered and rejected application of the drug treatment exception." *Brooker*, 858 F.3d at 987.

The hearing transcript similarly shows that everyone present believed treatment alternatives were on the table. Defense counsel argued at length that Reynolds needed treatment, not imprisonment. App. 33-36. He claimed that treatment would reduce the chance of recidivism. App. 33-34. He asserted Reynolds would be receptive to treatment and emphasized that Regional was willing to take him back. App. 28, 34.

The government did not claim that the court was barred from considering treatment instead of revocation. Rather, it repeatedly argued that revocation and imprisonment were appropriate on these facts because Reynolds had squandered prior chances for treatment. App. 32, 36.

The court likewise weighed the merits of treatment, explaining why Reynolds' conduct made it an inappropriate alternative to incarceration. One of the court's "largest concerns" was Reynolds' recent repeated failures to comply with court-ordered treatment. App. 43. "And if those alternatives to imprisonment won't work, they won't stick, then the unfortunate reality is, then, that imprisonment is the mechanism by which the Court needs to secure

deterrence and public protection and to promote those goals." App. 43-44; *see also* App. 44 ("I think the reality is, there will have to be imprisonment to promote federal sentencing goals.").

In sum, the parties and the court discussed the merits of treatment as an alternative to incarceration, and the court explained why it was not appropriate here. Nothing in 18 U.S.C. § 3583 required more.

Reynolds' contrary arguments are unpersuasive. First, he claims the district court's discussion of treatment options happened too late because it came in the sentencing phase, after the court announced it would revoke supervised release. Br. 16-18. But this is when Reynolds raised the issue, and the court's response at that point addressed not only the length of the sentence but also why it decided to incarcerate Reynolds at all. App. 43-44. Throughout discussion of the appropriate sentence, everyone viewed treatment as a permissible alternative; no one objected that the court was barred from even considering treatment in lieu of incarceration. And even if the court's explanation was belated, it still shows that any error was harmless. *See United States v. Lore*, 712 F. App'x 569, 571 (7th Cir. 2017) (per curiam) (applying harmless-error analysis in revocation proceedings). Regardless of the timing, the court clearly expressed at the hearing its conclusion that Reynolds' conduct made treatment an inappropriate alternative to revocation and incarceration.

There was no error here, let alone one that was plain or affected Reynolds' substantial rights.

Second, Reynolds notes the district court's brief comment that revocation was mandatory based on his drug possession. Br. 16 (citing App. 25). But he takes the remark out of context. At that point in the hearing, the court was reviewing the Sentencing Guidelines policy statements. App. 24-26. The court recognized that they provide a non-binding recommendation. App. 24. The policy statements classify violations by grade, based on the supervisee's "actual conduct." U.S.S.G. § 7B1.1(a) & cmt. n.1. "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Here, the court explained, Reynolds' "most serious" violation involved possessing methamphetamine. App. 25; *see also United States v. Trotter*, 270 F.3d 1150, 1153-54 (7th Cir. 2001) (permitting court for Guideline purposes to infer drug possession from positive drug test). Possessing methamphetamine is a felony and therefore a Grade B violation. U.S.S.G. § 7B1.1(a)(2); *see also* R. 45 at 6. The policy statements provide that, "[u]pon a finding of a Grade A or B violation, the court shall revoke probation or supervised release." U.S.S.G. § 7B1.3(a)(1). That is what the court was referring to on page 25 of the hearing

transcript: The court was discussing the Guidelines policy statements, and the advisory policy statement uses mandatory language.

But, as the court recognized, the policy statements are not binding in the first place. The court was simply summarizing the policy statement recommendation, which was that the court "shall revoke" for the Grade B violation. Ultimately, the court recognized, only the statutory considerations were binding. App. 24, 26, 39-45. That explains why the court still considered treatment instead of incarceration; had it actually viewed revocation as mandatory, there would have been no reason to do so. And if Reynolds found the court's remark problematic, he could have clarified it at the hearing. He did not, and he cannot now vacate his prison term by retrospectively overreading a passing comment that he did not object to at the time. The record as a whole shows the district court weighed treatment as an alternative to incarceration. There was no error, let alone one that was plain or harmed Reynolds' substantial rights.

Third, Reynolds relies on an Eighth Circuit case involving the § 3583(d) exception, *United States v. Pierce*, 132 F.3d 1207 (8th Cir. 1997). Br. 19. *Pierce* is distinguishable, though. In that mandatory revocation case, the defendant expressly told the district court it was not required to revoke his release for drug possession. 132 F.3d at 1207. The district court repeatedly stated that revocation was mandatory. *Id.* at 1207-08. When the defendant's mother

suggested imprisonment was not best for him, the district court answered that it "would well agree with [her]." *Id.* at 1208. "[H]owever," the court continued, "the law requires a mandatory sentence under these circumstances. … I sympathize with you, but I don't know what else I can do to be of help." *Id.* Based on the district court's remarks, the Eighth Circuit "was not convinced that the district court recognized" that it had discretion to consider treatment instead of incarceration, so it remanded. *Id.* at 1208-09.

As other courts have since explained, *Pierce* relied on affirmative indications that the district court believed it could not order treatment instead of incarceration. *Brooker*, 858 F.3d at 986-87; *Hammonds*, 370 F.3d at 1038-39. But there is no abuse of discretion absent such affirmative indications. *Brooker*, 858 F.3d at 986-87; *Hammonds*, 370 F.3d at 1038-39. Here the district court did not indicate that it was obligated to reject treatment out of hand. Rather, it weighed treatment options and found they were not sufficient based on Reynolds' conduct. There was no error, plain or otherwise, so the revocation judgment should stand.

# CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

CLIFFORD D. JOHNSON
United States Attorney

DAVID E. HOLLAR
Assistant United States Attorney
Chief, Appellate Division

By: /s/ *Eli M. Temkin*

Eli M. Temkin
Assistant United States Attorney
United States Attorney's Office
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
Email: eli.temkin@usdoj.gov
(219) 937-5500